IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CYTOSPORT, INC.,

    Plaintiff,                      No. CIV S-08-2632 FCD GGH

    vs.

VITAL PHARMACEUTICALS, INC.,

    Defendant.                ORDER

_____/

        Previously pending on this court's law and motion calendar for February 25, 2010, was defendant's amended motion to modify the protective order, filed January 7, 2010. Adam Thurston appeared on behalf of defendant. Mark Bettilyon and Jed Hansen represented plaintiff. After reviewing the parties' filings and hearing oral argument, the court now issues the following order.[1]

BACKGROUND

        Cytosport, Inc. ("CS") brought this action on November 14, 2008, against Vital Pharmaceuticals, Inc. ("VPX") for trademark and trade dress infringement, dilution, unfair

---

[1] Since the hearing in this case, the undersigned has learned of the unfortunate malfunctioning of the court's recording equipment which does not allow the court or the parties to review the transcript. Nevertheless, the record consisting of the parties' Joint Statement and this order is sufficient to allow review of the order.

1

competition, and false advertising in regard to CS's ready to drink protein beverage, Muscle Milk, claiming that VPX copied it in the form of its product, Muscle Power.

On March 30, 2009, the parties entered into a stipulated protective order, (dkt. #43), which provided in part that documents designated as "Confidential - Attorneys' Eyes Only" would be available only to "Qualified Persons," from which category in-house counsel were specifically excluded. (Id. at ¶ 10, n. 2.)

VPX now moves to modify that order to permit in-house counsel access to materials which are marked for attorneys' eyes only ("AEO"). The parties' arguments, both in their papers and at hearing, were beneficial and instructive.[2]

DISCUSSION

Generally, a party seeking reconsideration or modification of a court order has the burden to demonstrate the changed circumstances which warrant the modification. See E.D. Cal. LR 230(j). The same applies to the present motion to modify the protective order now in effect. Intel Corp. v. VIA Technologies, Inc., 198 F.R.D. 525 (N.D. Cal. 2000). In that case, as is the case here, Intel sought to modify the protective order to allow its in-house counsel access to confidential materials. Intel was found to have the burden of proof. Id. At 528. "Accordingly, because [Intel] seeks disclosure of information that would otherwise be confidential, Intel bears the burden of establishing a sufficient need for the information which outweighs the risk of injury to VIA, "id, citing Brown Bag Software v. Symantec Corp. 960 F.2d 1465, 1470 (9th Cir.1992).[3]

Within the context of the proper burden, "[t]he risk of potential inadvertent

---

[2] In issuing this decision, the undersigned has not considered the character evidence pertaining to CEO John Owoc presented by CS at the hearing.

[3] In a somewhat confusing passage, Intel provides that the party *opposing* modification has the burden of showing good cause for continuing the protection. However, it is clear that this burden arises in the context of the request of a outside party or the public for access to information which would otherwise be confidentially held pursuant to the protective order. Intel, 198 F.R.D. at 528. However, Intel went on to hold in accordance with the quote in the text, that the party in the litigation which had previously agreed to the protective order bore the burden of seeking changes to the order.

disclosure by counsel must be determined by 'the facts on a counsel-by-counsel basis.'" <u>Intel</u>, 198 F.R.D. at 529, *quoting* <u>U.S. Steel Corp. v. United States</u>, 730 F.2d 1465, 1468 (Fed. Cir. 1984); <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1470 (9th Cir. 1992).

       In support of its initial burden, VPX claims it has made a strategy change since the original protective order was agreed upon such that the role of VPX's legal counsel has changed. Unlike previous in-house counsel, current in-house counsel is taking a leading role in litigation matters. The current protective order limits in-house counsel's ability to effectively litigate this case. Consequently, VPX claims it has a due process right to counsel of its choosing. Furthermore, the original protective order was agreed to by former in-house counsel, Erica Stump, without approval by VPX President and CEO, John Owoc. VPX contends that it should not be punished for this unilateral decision by former in-house counsel. [4]

       CS argues that it has a compelling reason to maintain the current protective order, to protect commercially sensitive information protected from disclosure to rival companies. CS points out that the stipulated protective order was a culmination of a preliminary injunction affirmed by the Ninth Circuit, preventing VPX from manufacturing, marketing or selling its Muscle Power product, as well as discovery, and that it was carefully negotiated.

       The parties have provided helpful cases to aid in the determination of this difficult issue. First, "where in-house counsel is involved in 'competitive decisionmaking,' the risk of disclosure may outweigh the need for confidential information." <u>U.S. Steel Corp.</u>, 730 F.2d at1468. Competitive decisionmaking has been described as involving "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and

---

[4] This argument is weak. VPX had outside counsel at the time who was also involved in stipulating to the protective order. Tactical decisions, such as agreeing to protective orders, are within the province of counsel, and do not normally require client approval. It is also ironic that VPX now desires to have in-house counsel control the litigation after just having criticized former in-house counsel for having so acted. Moreover, this argument intimating that the CEO needs to make all decisions in this litigation detracts from VPX's argument that its CEO would not be intimately involved in *all* aspects of the litigation, including that involving confidential information.

participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Id. at 1468, n. 3.  Second, without evidence of actual prejudice, the moving party cannot show good cause.  Intel Corp., 198 F.R.D. at 528-529 (no prejudice where Intel could not show ability to litigate through outside counsel was impaired).  A third factor to be considered is "the risk and potential danger of disclosure."  Wi-Lan, Inc. v. Acer, Inc., 2009 WL 1766143, *2 (E.D. Tex. 2009), *citing* Infosint S.A. v. H. Lundbeck A.S., 2007 WL 1467784, *2 (S.D. N.Y. 2007).

VPX contends that in-house counsel has no role in competitive decisionmaking, but that the sole decision maker is President/CEO John Owoc.  According to VPX, in-house counsel does not attend managerial meetings, participate in management decisions, has no knowledge of technical product information, and has no role in vendor selection, product development, pricing, or product design.  VPX describes in-house counsel as a law firm within the company but physically isolated in a secure wing at VPX headquarters with locked file cabinets, for which only legal staff has keys.  VPX concedes, however, that in-house counsel does have some small role in translating contracts into the appropriate legal form after the company's agreements are negotiated and approved by the CEO.

The declaration of Kalina Pagano, VPX's in-house counsel, describes the duties of in-house counsel:

> (a) manage VPX trademarks and advise as to the legality of intellectual property issues; (b) conduct litigation matters in state and federal court, as well as proceedings before the Trademark Trial and Appeals Board; (c) review contracts and advise as to their enforcement and/or modification; (d) draft contracts using already negotiated contract terms supplied from VPX managerial and sales staff; (e) prepare documents and correspondence on employment matters; (f) review insurance policies and file claims with insurance companies; and, (g) ensure VPX's compliance with federal and state laws and regulations.

Pagano Decl., ¶ 16 (dkt. #123-3).

CS, on the other hand, asserts that because VPX's new in-house counsel intends

to represent the company in state and federal litigation, they will be privy to competitive decisions. Since both companies manufacture and sell an identical product, and they bottle their products at the same facility, there is a high risk that in-house counsel would have to be involved in competitive decision making.

It is difficult to grasp the concept of in-house counsel being focused on litigation only, as there are many other legal issues sure to be raised through VPX's business affairs such as licensing, which require competitive decision making, as well as all the other duties listed by in-house counsel Pagano in her declaration. See Intel, 198 F.R.D. at 530. If the CEO is not a lawyer, query who will advise him on such issues. Questions such as the extent that in-house counsel will be advising the employer on such legal issues as input on contract formation, marketing, and employment are important but unknown here. See Wi-Lan, 2009 WL 1766143 (examining extent of involvement in decision making).

From the record presented thus far, CS's concerns are warranted. Without an involved evidentiary hearing, VPX could not sustain its burden in demonstrating to what extent this new in-house counsel will be involved in competitive decision making. However, VPX has not earned the right to such a hearing.

VPX has failed to persuade the undersigned that it will be prejudiced without the requested modification of the protective order. The proffered prejudice, that its counsel will not be able to fully assess the evidence, prepare dispositive motions, review sealed filings by CS, and participate in trial preparation and trial, only results if VPX uses in-house counsel. The real issue is why VPX suddenly needs to use in-house counsel. Its argument that it generally serves to reduce costs does not make a sufficient showing of actual prejudice. Although VPX attempts to distinguish Intel, Brown Bag and MMCA (citation, infra ) as cases involving in-house counsel who were not essential to the litigation, and did not act as lead counsel on all litigation matters as VPX's in-house counsel does, VPX avoids relating the necessary reason for switching to in-house counsel as lead counsel for this litigation. VPX does not argue that it can no longer afford

outside counsel, that the company will not survive if it must continue to use outside counsel, or that it is on the verge of bankruptcy. During the hearing, VPX counsel was given two opportunities to state why it changed its litigation strategy to use in-house counsel as lead counsel on this case, and counsel represented that he was not privy to the reason. Whether counsel could go back to the company and obtain a specific reason now is a question whose time has passed. The time for proposing a reason amounting to prejudice was in making the motion and at the hearing.

Moreover, in Intel, the court determined that in-house counsel did not demonstrate specialized knowledge or more than limited experience, thus she was not indispensable to the litigation. 198 F.R.D. at 529. That the party had to rely on competent outside counsel did not create an "undue and unnecessary burden." Id. Here, VPX does not demonstrate that its newly hired in-house counsel has any highly specialized knowledge about this case or its issues. It is not enough that the protective order merely increases the difficulty of managing the litigation. Intel, 198 F.R.D. at 528.

Moreover, VPX's Fifth Amendment due process reliance on being able to utilize "counsel of its choice," does not mandate that the court has no power to protect confidential information from in-house counsel. A civil litigant's right to counsel of his choice is not absolute, and can be overridden if counsel's participation would interfere with the "orderly administration of justice." In re Bell South Corp., 334 F.3d 941, 955-56 (11th Cir. 2003). One's right to choose counsel in a civil case, "'goes no further than arbitrary dismissal of a chosen attorney, and providing a fair opportunity to secure counsel of one's choice.'" Kentucky West Virginia Gas Co. V. Pa. PUC, 837 F.2d 600, 618 (3rd Cir. 1988). If the rule were otherwise, "counsel of one's choice" could never be disqualified in a civil action for conflicts, misconduct, or other important reasons. Here, protection of trade secrets, which is deemed important enough to allow sealing and other protections in a public court, is important enough to restrict "counsel of one's choice" from viewing the secrets in appropriate situations.

6

The risk and potential danger of disclosure is compounded here in that VPX has only two attorneys on its in-house counsel team, and it is a relatively small company. See MMCA Group, Ltd. v. Hewlett Packard Co., 2009 WL 1874026, *2 (N.D. Cal. 2009). Should counsel later need to recuse herself after this case is concluded based on knowledge she received in this case, the remaining lawyer may be unable to handle the workload by herself. This is not a situation as mentioned at hearing similar to Microsoft which has 50 in-house attorneys, any one of which could take over in such a case and be walled off from the other attorneys and management.

An important related consideration, however, is CS' argument that counsel cannot "lock away" information in her mind every time she faces a company issue or has interactions with the CEO who is responsible for all competitive decision making. If she cannot disclose important information learned from this case to the CEO, she may not be able to render legal advice to her client. As stated in Intel, "[i]t is necessary to examine the role of in-house counsel in the corporation to determine whether knowledge of confidential information would place the counsel 'in the untenable position of having to refuse his employer legal advise on a host of ... decisions lest he improperly or indirectly reveal ... trade secrets.'" Intel, 198 F.R.D. at 531, *quoting* Brown Bag, 960 F.2d at 1472. As set forth in footnote 4, it does not appear that the CEO would accept a passive role in this litigation.

Finally, it is apparent that the consequences of disclosure would be grave as both companies are in direct competition through the sale of almost identical products in the same manner to a similar audience.

VPX has not made a showing of actual prejudice sufficient to overcome the previously agreed upon protective order which has been in effect for almost a year. When balanced against the risks of inadvertent disclosure, it is apparent that the protective order should not be modified.

////

CONCLUSION

For the reasons stated in this opinion, IT IS ORDERED that:

1. VPX's amended motion to modify protective order, filed January 7, 2010, (dkt. # 123), is denied.

2. CS shall review AEO documents for overdesignation and shall rectify any overdesignation within 14 days of this order.

DATED: March 2, 2010

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH:076
Cytosport2632.modpo.wpd