UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CYTOSPORT, INC.

        Plaintiff,

    v.

VITAL PHARMACEUTICALS, INC.,

        Defendant.

NO. CIV. S-08-2632 FCD/GGH

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter is before the court on defendant Vital Pharmaceuticals, Inc.'s ("VPX") motion for reconsideration of the magistrate judge's March 2, 2010 order, denying VPX's amended motion to modify protective order. Fed. R. Civ. P. 72(a); E.D Cal. L.R. 303(c). VPX sought modification of the parties' Stipulated Protective Order (Docket #43) (the "Protective Order") on the ground that it prevented VPX's in-house counsel from effectively functioning as lead counsel in this action by denying counsel access to materials designated "Attorneys' Eyes Only" ("AEO"). The magistrate judge denied VPX's motion, finding that VPX failed to demonstrate that it would suffer actual prejudice

1

if the Protective Order remained in place, and thus, it failed to meet its initial burden of demonstrating good cause to modify the order. (Docket #132.) The magistrate judge further found that modifying the Protective Order would result in both an increased risk of inadvertent disclosure of trade secret material as well as grave consequences to plaintiff CytoSport, Inc. ("CS") resulting from any such disclosure.[1] (Id.)

**BACKGROUND**

CS brought this action on November 14, 2008 against VPX for trademark and trade dress infringement, dilution, unfair competition and false advertising in regard to CS's ready to drink protein beverage, Muscle Milk, claiming VPX copied it in the form of VPX's product, Muscle Power. On March 30, 2009, the parties entered into the Protective Order, which provided in part that documents designated AEO would be available to "Qualified Persons," from which category in-house counsel were specifically excluded. (Docket #43 at ¶ 10, n. 2.)

Subsequently, VPX replaced its general counsel and established a new in-house legal department, consisting of three lawyers and support staff. VPX selected its new general counsel and in-house legal department to act as lead litigation counsel for all VPX litigation across the country, including this action. In making this selection, VPX replaced its former lead counsel in this case, Perkins Coie, and retained new outside counsel to act

---

[1] Because the court finds that oral argument will not be of material assistance, it orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

2

as local counsel.[2] VPX asserts that as its new counsel came up to speed on the case and began to prepare for depositions, it became clear that VPX's in-house counsel could not effectively function as lead counsel without access to AEO material. VPX sought CS's agreement to modify the Protective Order, but CS refused, claiming the Protective Order was necessary to protect commercially sensitive information from disclosure to rival companies. CS emphasized that the Protective Order was entered following this court's grant of a preliminary injunction preventing VPX from manufacturing, marketing or selling its Muscle Power product, which was affirmed by the Ninth Circuit, as well as discovery, and that it was carefully negotiated between the parties.

Because CS would not agree to modification of the order, VPX filed the underlying motion to modify the protective order.[3]

**STANDARD**

The standard of review on a motion for reconsideration of a magistrate judge's ruling on a nondispositive matter is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); E.D. Cal. L.R. 303(f). Under that standard, the court must accept the magistrate judge's decision unless it has a "definite and firm

---

[2] Said counsel is located in California but in Los Angeles. VPX's in-house legal department is located in Florida.

[3] In opposing the instant motion, CS offers a sealed Declaration of Samuel Straight, attaching six exhibits that CS brought to the hearing on the underlying motion. CS offers the exhibits as proof that it will suffer grave consequences from inadvertent disclosure. The exhibits were rejected and not considered by the magistrate judge. Accordingly, they do not form the basis for his order, and thus, this court has likewise not considered the declaration or attached exhibits.

3

conviction that a mistake has been committed." <u>Concrete Pipe & Prods. of Cal., Inc. v. Const. Laborers Pension Trust for So. Cal.</u>, 508 U.S. 602, 622 (1993); <u>Husain v. Olympic Airways</u>, 316 F.3d 829, 835 (9th Cir. 2002).

**ANALYSIS**

VPX makes a number of arguments in support of its motion, many of which are overlapping and basically raise the same point. Its essential arguments can be summarized as follows: the magistrate judge erred in (1) misapplying the governing case law addressing modification of protective orders; (2) finding VPX failed to show actual prejudice since continuation of the Protective Order infringes on its constitutional right to select counsel of its choosing; and (3) *assuming* an increased risk of inadvertent disclosure based merely on counsel's in-house status.

The court has reviewed the parties' papers, including their submissions on the underlying motion, and contrary to VPX's protestations, it cannot find any error in the magistrate judge's order. First, the magistrate judge applied the correct legal standard to the motion. To modify the Protective Order, VPX had to show preliminarily how the Protective Order would prejudice its case; in other words, to demonstrate the requisite "good cause" to modify the order, VPX had to demonstrate actual prejudice. <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1470 (9th Cir. 1992); <u>Intel Corp. v. VIA Techs., Inc.</u>, 198 F.R.D. 525, 528 (N.D. Cal. 2000). If VPX established good cause, then the court balances, "the risk of inadvertent disclosure of trade secrets to [VPX], against the risk . . . that protection of . . . trade secrets impaired prosecution [of VPX's] claims." <u>Intel</u>

4

Corp., 198 F.R.D. at 528.

Here, the magistrate judge correctly found that VPX offered no evidence of actual prejudice; namely, evidence as to why its use of in-house counsel as lead counsel was critical to this case. Indeed, VPX wholly failed, and continues to fail, to adequately explain the reasons why it switched to in-house counsel. Courts have found actual prejudice where a party has shown that the use of in-house counsel was necessary due to the specialized expertise of the counsel, required in order to maintain a company's financial stability or essential to its prosecution or defense of an action due to outside counsel's incompetency or lack of sufficient time to present the client's best case.[4]  See Intel, 198 F.R.D. at 529-30; Brown Bag, 960 F.2d at 1470-72. That VPX must rely on competent *outside* counsel does not create an "undue and unnecessary burden," sufficient to demonstrate actual prejudice, as recognized in Intel. Intel, 198 F.R.D. at 529-30. As the magistrate judge emphasized, it is not enough that the Protective Order merely increases the difficulty of managing the litigation; rather, VPX must show it "actually prejudice[s] [its] presentation of [its] case." Id. at 528

---

[4] Contrary to VPX's contentions, the magistrate judge did not require VPX to divulge attorney/client communications when he inquired as to the reasons why VPX chose to use in-house counsel as its lead counsel. The magistrate judge's question was a proper inquiry in order to ascertain whether there was any actual prejudice, and if VPX was concerned about the disclosure of any protected attorney/client communications, it could have submitted its reasons *in camera* to the court. Instead, during the hearing on the motion, VPX's counsel simply stated that he was not "privy" to the reasons why the choice was made. VPX again does not offer any explanation on the instant motion, except to intimate, in conclusory fashion, that the choice was made for cost savings reasons. This bald assertion is not evidence of actual prejudice.

1  (finding no prejudice where Intel could not show its ability to
2  litigate through outside counsel was impaired).  Indeed, it is
3  noteworthy that though VPX terminated its former counsel, Perkins
4  Coie, it still retains outside counsel, who it describes as its
5  "local counsel."  Presumably, that counsel can review any AEO
6  material subject to the Protective Order.

7      Notwithstanding these governing standards, VPX contends that
8  the magistrate judge's order is in error because it ultimately
9  prevents VPX from utilizing "counsel of its choice"--a right VPX
10 asserts is constitutionally protected by the due process clause
11 of the Fifth Amendment.  A civil litigant's right to counsel of
12 its choice, however, is not absolute, and the right can be
13 overridden, as even VPX acknowledges, for "compelling" reasons.
14 See In re Bell South Corp., 334 F.3d 941, 955-56 (11th Cir. 2003)
15 (relied on by both VPX and the magistrate judge).  Here, the
16 magistrate judge properly found that "the protection of trade
17 secrets, which is deemed important enough to allow sealing and
18 other protections in a public court, is important enough to
19 restrict 'counsel of one's choice' from viewing the secrets in
20 appropriate situations."  (Docket #132 at 6:24-26.)

21      Because VPX failed to meet its initial burden of
22 demonstrating good cause for modifying the Protective Order, the
23 magistrate judge's additional findings regarding the increased
24 risk of disclosure and the danger of harm to CS are essentially
25 dicta.  See Intel, 198 F.R.D. at 528 (stating that the moving
26 party must first demonstrate that it has good cause for modifying
27 the protective order).  As such, any error in these findings is
28

6

irrelevant for purposes of the instant motion.[5]  This court finds that the magistrate judge properly denied VPX's motion based on its lack of a showing of actual prejudice.  The discussion properly ends there; no further balancing of interests is necessary.

However, because the magistrate judge balanced the relevant interests, the undersigned has also reviewed these findings and concludes that they are not clearly erroneous or contrary to law.  The magistrate judge did not err in finding an increased risk of inadvertent disclosure.  Significantly, here, VPX has only three attorneys in its in-house legal department, and it is a relatively small company; VPX conceded that its in-house counsel are directly reportable to the company's CEO, Jack Owoc, who is responsible for all competitive decisionmaking.  Thus, the magistrate judge correctly noted that the risk and potential danger of inadvertent disclosure is "compounded" by these facts.  (Docket # 132 at 7:1-2.); see MMCA Group, Ltd. v. Hewelett-Packard Co., No. C-06-7067 MMC (EMC), 2009 WL 1874026, *2 (N.D. Cal. June 26, 2009) (recognizing the risk of inadvertent disclosure was "compounded" by the fact that in-house counsel worked for a small company and was the only in-house attorney tasked with providing legal advice to the company).  Moreover, the magistrate judge did not, as VPX contends, simply assume a likelihood of disclosure based on counsel's in-house status.

---

[5] For example, VPX's argument that the magistrate judge improperly denied it an evidentiary hearing on the issue of whether there was an increased risk of disclosure of AEO material is inapposite.  Such a hearing is unnecessary since VPX failed to meet its threshold burden.

7

Instead, VPX's own evidence demonstrated that its in-house counsel is involved in the competitive decisionmaking process. (See Pagano Decl.)  Courts recognize that where such involvement exists, "the risk of disclosure may [well] outweigh the need for confidential information." U.S. Steel Corp. v. U.S., 730 F.2d 1465, 1468 (Fed. Cir. 1984).

In MMCA, 2009 WL 1874026, *1, the court held that in-house counsel's activities, including drafting and/or rendering advice on contracts between the defendant and its clients and employees, while not specifically addressing competitive issues like pricing and hiring, still "implicate[d] competitive decisionmaking." Even "input" on contracts and their enforceability involved matters of competitive decisionmaking, thus disqualifying counsel from access to AEO materials.  Id.  Such is also the case here, as VPX's in-house counsel describes her duties similarly to counsel in MMCA.  (Docket # 132 at 4.)  Finally, the magistrate judge properly considered the impracticalities of the situation. He reasonably found that in-house counsel could not be expected to "lock away" in her mind information related to this case every time she faced a company issue or had interaction with the CEO. Because this was likely not possible, counsel would be placed in an untenable position, potentially being unable to render adequate legal advice to her client.  See Intel, 198 F.R.D. at 531 (denying in-house counsel access to AEO material in part because it placed counsel in the "untenable position of having to refuse his employer legal advise on a host of . . . decisions lest he improperly or indirectly reveal . . . trade secrets").

No only was there a heightened risk of inadvertent disclosure, the consequences of disclosure to CS would be grave, as the magistrate judge found.  In fact, VPX makes no meaningful arguments to the contrary.  Both companies are in direct competition through the sale of almost identical products in the same manner to a similar audience.  As evidenced by this court's grant of a preliminary injunction against VPX, the potential harm to CS by disclosure of its trade secrets is significant and cannot be ignored.  CS's trade secrets could be used by its competitors to copy its highly successful products, compete for customers, or otherwise interfere with CS's business plan and thereby, allow competitors to gain an advantage in the marketplace.

**CONCLUSION**

For the foregoing reasons, VPX's motion for reconsideration is DENIED.  The court cannot find that the magistrate judge's March 2, 2010 order denying VPX's motion for modification of the Protective Order is clearly erroneous or contrary to law.  The magistrate judge correctly found that VPX failed to demonstrate good cause to modify the order as it offered no evidence of any actual prejudice caused by continuation of the order, and even if such prejudice existed, the balance of interests weighed in favor of maintenance of the order as originally negotiated.  The risk of inadvertent disclosure was too high considering the nature of the VPX's in-house legal department and in-house counsel's specific role in the company and the consequences are dire to CS

///

///

if disclosure of its trade secrets occurs.[6]

IT IS SO ORDERED.

DATED: May 10, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[6] In opposing the motion, CS complains that VPX refuses to allow CS to take VPX's Rule 30(b)(6) deposition and asks that this court consider extending the discovery period to permit CS additional time to take this deposition. Consideration of this issue is not appropriate on the instant motion; if CS wishes to extend the discovery deadline, it should file the appropriate motion under Rule 16.

10