ALAN J. DROSTE [SBN 105616]
adroste@kpdlex.com
KING PARRET & DROSTE LLP
450 Newport Center Drive, Suite 500
Newport Beach, CA 92660
Telephone: (949) 644-3484
Facsimile:  (949) 644-3993

KALINA PAGANO (*pro hac vice*)
kpagano@vpxsports.com
VICTORIA N. GODWIN (*pro hac vice*)
vickeyg@vpxsports.com
VITAL PHARMACEUTICALS, INC.
1600 North Park Drive
Weston, FL  33326
Telephone:  (954) 641-0570
Facsimile:  (954) 389-6254

Attorneys for Vital Pharmaceuticals, Inc.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYTOSPORT, INC., <br><br> Plaintiff, <br><br> v. <br><br> VITAL PHARMACEUTICALS, INC., <br><br> Defendant. <br><br> AND COUNTERCLAIM. | Case No. 2:08-cv-02632-JAM-GGH <br><br> RESPONSE OF VITAL PHARMACEUTICALS, INC. IN OPPOSITION TO CYTOSPORT, INC.'S MOTION TO EXCLUDE THE SURVEY, REPORT AND TESTIMONY OF GABRIEL GELB; MEMORANDUM OF POINTS AND AUTHORITIES <br><br> Filed Concurrently with: <br> Declaration of Gabriel Gelb <br><br> Before: Hon. John A. Mendez <br> Date: August 8, 2012 <br> Time: 9:30 a.m. <br> Courtroom: 6 |

Defendant and Counterclaimant Vital Pharmaceuticals, Inc. ("VPX") presents the following Response and supporting Memorandum of Points and Authorities in Opposition to CytoSport, Inc.'s ("Cyto") Motion to Exclude the Survey, Report and Testimony of Gabriel Gelb under FRE 702 and 403.

TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT…………………………… 1

II.  GABRIEL GELB IS A CERTIFIABLE EXPERT IN THE AREA OF
     CONSUMER SURVEYS……………………………………………………………... 1

III. GABRIEL GELB EMPLOYED GENERALLY ACCEPTED PRINCIPLES AND
     PROCEDURES WHEN CONDUCTING HIS SURVEY IN RELATION TO THE
     ISSUES AT HAND, MAKING HIS SURVEY, REPORT AND OPINION
     THEREOF ADMISSIBLE………………………………………………………………. 2

IV.  DISALLOWING A SURVEY THAT IS SHOWN TO HAVE BEEN
     CONDUCTED UNDER ACCEPTED PRINCIPLES IS NOT APPROPRIATE AT
     THE SUMMARY JUDGMENT STAGE OF A CASE……………………………….. 6

V.   IT IS IMPROPER FOR CYTO TO TRY TO RELY ON NON-PURSUASIVE,
     NON-BINDING PRECEDENT WHEN THERE IS AMPLE NINTH CIRCUIT
     BINDING PRECEDENT FOR THIS COURT TO CONSIDER…………………... 7

VI.  CONCLUSION……………………………………………………………………….. 8

TABLE OF AUTHORITIES

Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252 (9th Cir. 2001)................... 2, 6

E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280 (9th Cir. 1992)................ 5

Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc., 618 F.3d (9th Cir. 2010)............................................................................ 5, 7

Keith v. Volpe, 858 F.2d 467 (9th Cir. 1988)................................................ 3

Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp., 694 F.2d 1150 (9th Cir.1982)....... 5

Tarkus Imaging, Inc. v. Adobe Systems, Inc., 2012 WL 2175788 (D.Del. June 14, 2012)......................................................................................... 7

MEMORANDUM OR POINTS AND AUHTORITIES

I. INTRODUCTION AND SUMMARY OF ARGUMENT.

Cyto's motion should be denied on several independently sufficient grounds, as addressed in more detail below. See Declaration of Gabriel Gelb ("Gelb Decl").

(a) Cyto's motion goes to the weight, not the admissibility of Mr. Gelb's survey and opinion testimony. Mr. Gelb is a highly credentialed expert regarding consumer surveys, having been qualified to testify on numerous occasions throughout his career. The threshold for admissibility of the Gelb survey has been established, as it has with Mr. Gelb's opinions, as all of Cyto's various arguments concerning Mr. Gelb go toward the weight of his opinions not their admissibility.

(b) Mr. Gelb employed generally accepted principles and procedures, and his survey results are valid and admissible. As set forth in the Gelb Declaration, in the evaluation of reliability and credibility, the Gelb opinion testimony far outweighs the invalid survey and opinions of Cyto Expert Kent Van Liere.

(c) Cyto improperly attempts to rely on non-binding precedent when there is substantial binding authority fully supportive of the admissibility of the Gelb survey and opinions at the summary judgment stage.

II. GABRIEL GELB IS A CERTIFIABLE EXPERT IN THE AREA OF CONSUMER SURVEYS.

Mr. Gelb has been working as a survey expert for purposes of litigation for over thirty years. (Gelb Decl ¶¶2,6.)  He has been deemed an expert by Courts all over the United States and has testified in numerous matters including trademark confusion surveys and false advertising surveys.  (Gelb Decl ¶¶4,6.)  Mr. Gelb has even done survey research for the United States Olympic Committee, Pepsi Co., Apple Inc. and Amazon, among some of his clients. (Gelb Decl ¶¶2,6.)  Mr. Gelb is experienced in the area of consumer surveys.  In addition to having conducted a multitude of intellectual property consumer surveys over the past decades, Mr. Gelb has written publications on the various consumer survey topics, and he is accredited by the State Bar of Texas for his CLE course, "Uses and Misuses of Surveys in IP Litigation." (Gelb Decl ¶¶3,5,6.)

Rule 702 of the Federal Rules of Evidence states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence . . . a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." Fed. R. Evid. 702. It is readily apparent from Mr. Gelb's CV, attached to the Rebuttal Report dated February 17, 2012 at Exhibit "A", that he is a qualified expert by not only his years of experience in the area of consumer surveys but also by his specialized skill and knowledge, which he has on many occasions provided via expert testimony, article publications and CLE classes.

Cyto has done nothing more than attempt to muddy the decades worth of reputation that Mr. Gelb has built for himself and his consulting firm. By pointing to a handful of cases in which a Court admitted Mr. Gelb's surveys and later pointed out minimal flaws in the survey does nothing other than show Mr. Gelb is a certifiable expert in consumer surveys and that he practices accepted principles and procedures within the industry, and thus his surveys are deemed admissible.

Asserted flaws or questions about Mr. Gelb's survey or other expert opinions go to weight not admissibility.

III. <u>GABRIEL GELB EMPLOYED GENERALLY ACCEPTED PRINCIPLES AND PROCEDURES WHEN CONDUCTING HIS SURVEY IN RELATION TO THE ISSUES AT HAND, MAKING HIS SURVEY, REPORT AND OPINION THEREOF ADMISSIBLE.</u>

All of Cyto's arguments relate to the weight that should be given to Mr. Gelb's expert opinion testimony and not to its admissibility. "Treatment of surveys is a two-step process. First, is the survey admissible? That is, is there a proper foundation for admissibility, and is it relevant and conducted according to accepted principles?" <u>Clicks Billiards Inc. v. Sixshooters Inc</u>., 251 F.3d 1252, 1263 (9th Cir. 2001) (citing <u>Wendt v. Host Int'l, Inc</u>., 125 F.3d 806, 814 (9th Cir.1997); <u>E. & J. Gallo Winery</u>, 967 F.2d at 1292–93.) "This threshold question may be determined by the judge. Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to

the weight of the survey rather than its admissibility. These are issues for a jury or, in a bench trial, the judge." Id. (citing Stuhlbarg, 240 F.3d at 840).

"The proponent of the survey bears the burden of establishing its admissibility." Keith v. Volpe, 858 F.2d 467, 1212-1213 (9th Cir. 1988) (citing Pittsburgh Press Club v. United States, 579 F.2d 751, 758 (3d Cir.1978)). "The proponent must show that the survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner." Id. (citing Baumholser v. Amax Coal Co., 630 F.2d 550, 552 (7th Cir.1980)). "Technical inadequacies in the survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." Id. (citing Prudential Insurance Co. v. Gibraltar Financial Corp., 694 F.2d 1150, 1156 (9th Cir.1982), cert. denied, 463 U.S. 1208, 103 S.Ct. 3538, 77 L.Ed.2d 1389 (1983); C.A. May Marine Supply Co. v. Brunswick Corp., 649 F.2d 1049, 1055 n. 10 (5th Cir.) (per curiam), cert. denied, 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981); see also Piper Aircraft Corp. v. Wag–Aero, Inc., 741 F.2d 925, 930–31 (7th Cir.1984)).

Cyto has presented four arguments with regard to the survey conducted by Mr. Gelb relating to the Muscle Milk product name: (1) that the Gelb survey does not measure whether the Muscle Milk mark caused consumer confusion; (2) that Mr. Gelb made respondents guess because he didn't offer an "I don't know" option; (3) that the survey questions were ambiguous because Mr. Gelb provided no definition of milk; and (4) that the survey didn't replicate actual market conditions.

None of Cyto's arguments go toward the admissibility of Mr. Gelb's survey, report or opinion, but rather they can be presented to the trier of fact at the appropriate time, so that the trier of fact may then provide the appropriate weight for the survey in the decision on the issues in this case.

Moreover, Cyto attempts to rely on a false premise for the presentation of its arguments in its motion. VPX's counterclaim does not allege that consumers are confused by Cyto's Muscle Milk mark. Rather, VPX alleges that the Muscle Milk name, in relation to the Cyto product, deceives and misleads consumers into thinking that the Muscle Milk product contains milk. Any

argument by Cyto that Mr. Gelb's survey does not show evidence of consumer confusion is wholly misplaced, as Cyto is attempting to confuse the applicable standard in relation to what the survey was testing for.

Mr. Gelb's survey in fact does measure whether the Muscle Milk name deceived or misled consumers into thinking the Muscle Milk product contains milk. When respondents to the survey answered that Muscle Milk had some or a lot of milk, that respondent was then asked a follow-up question as to why they thought so. The responses to that follow-up question were then recorded and coded, indicating a large number of respondents thought Muscle Milk contained milk because of the product name. (See a copy of my Report attached to the Declaration of G.Charles Nierlich as "Exhibit C" (DE 193-3.)) Cyto mistakenly argues that subjects had to guess when answering because they did not have an "I don't know" option. The follow-up question, however, allowed for the respondent to answer "I don't know," and if they did they were coded accordingly. Cyto then speculates that perhaps subjects who answered that Muscle Milk contains milk thought it was because of milk derived ingredients and not the name because Mr. Gelb provided no definition of milk. If that were the case, then they stated so in the follow-up question and were coded accordingly.

Mr. Gelb's survey was conducted under the principles and procedures that are accepted in the field of consumer surveys. (Gelb Decl ¶27.) The Gelb survey included a sample population of individuals who have purchased a protein drink within the last six months or were likely to purchase a protein drink within the next six months. These individuals are likely to be familiar or should be somewhat familiar with the drinks within the industry as they represent the target market. The survey sought to and in fact tested whether or not consumers thought, from the product name "Muscle Milk," whether the product contained milk. (Gelb Decl ¶29.)

Cyto tries to argue that Mr. Gelb did not use a "control," but a control is not necessary when testing whether a consumer is deceived or misled by a product name. Rather, controls are more commonly used in trademark infringement surveys when testing competing marks (which would be analogous to the surveys conducted by Dr. Poret and Mr. Klein in the instant case).

1    Cyto also tries to argue that Mr. Gelb's survey does not replicate the market. This
2 argument is irrelevant for the purposes of the survey and the claims brought by VPX against Cyto.
3 The claims center around the mark "Muscle Milk" and whether that *name* would lead consumers
4 to believe that a product utilizing such a *name* would contain milk, especially when considering
5 the protein drink niche industry. The survey conducted by. Mr. Gelb tested just that – it was
6 inconsequential whether or not the respondent got to see the packaging of the product.

7    "The Ninth Circuit has stated that surveys in trademark cases are to be admitted as long as
8 they are conducted according to accepted principles. 'Technical unreliability goes to the weight
9 accorded a survey, not its admissibility.'" E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d
10 1280, 1292 (9th Cir. 1992) (citing See Prudential Ins. Co. v. Gibraltar Fin. Corp., 694 F.2d 1150,
11 1156 (9th Cir.1982), cert. denied, 463 U.S. 1208, 103 S.Ct. 3538, 77 L.Ed.2d 1389 (1983)). See
12 also, Wendt v. Host Intern., Inc.,  125 F.3d 806, 814 (9th Cir. 1997) ("In their opposition to
13 Paramount's summary judgment motion, appellants offered into evidence the results of a consumer
14 survey taken in the vicinity of the Cheers bars at the Cleveland and Kansas City airports. The
15 district court refused to admit the evidence, saying that the evidence was 'not a good survey.' As
16 the record stood, the refusal was an abuse of discretion. In trademark cases, surveys are to be
17 admitted as long as they are conducted according to accepted principles and are relevant. E & J
18 Gallo Winery, 967 F.2d at 1280; see also Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp., 694
19 F.2d 1150, 1156 (9th Cir.1982). Challenges to survey methodology go to the weight given the
20 survey, not its admissibility. Prudential Ins., 694 F.2d at 1156.

21    The Ninth Circuit has held that lower courts abuse their discretion by refusing to admit a
22 survey conducted by a well-established expert, stating "we have made clear that 'technical
23 inadequacies' in a survey, 'including the format of the questions or the manner in which it was
24 taken, bear on the weight of the evidence, not its admissibility." Fortune Dynamic, Inc. v.
25 Victoria's Secret Stores Brand Management, Inc., 618 F.3d 1025 (9th Cir. 2010).

26
27
28

## IV. DISALLOWING A SURVEY THAT IS SHOWN TO HAVE BEEN CONDUCTED UNDER ACCEPTED PRINCIPLES IS NOT APPROPRIATE AT THE SUMMARY JUDGMENT STAGE OF A CASE.

As long as a survey has been done in accordance with accepted principles, it is inappropriate to disallow such a survey to be utilized at either the summary judgment or trial phase. As stated above, under the well-established and controlling case law, treatment of surveys is a two-step process. First, whether the survey is admissible, because it follows accepted principles and processes. Once the survey meets this threshold and is deemed admissible, then all the follow-up issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey. Cyto is improperly asking this Court to use the issues of methodology and survey design to determine the admissibility rather than the weight of the Gelb survey, and in turn Mr. Gelb's reports and opinions. Not only is it improper to use the elements of weight toward admissibility when analyzing the use of a survey but also it is improper to make such a determination at the summary judgment stage.

The Circuit Court in <u>Clicks Billiard</u> found that the district court abused its discretion in deeming a survey it concluded to have flaws inadmissible at the summary judgment phase of the case. <u>Clicks Billiards Inc. v. Sixshooters Inc</u>., 251 F.3d 1252, 1262-1263 (9th Cir. 2001) ("The district court stated, 'This survey is not without flaws,' and ultimately concluded, 'Put bluntly, the survey is of little or no value.' . . . This is a valid observation and may indeed be true, but the issue is not one subject to resolution on summary judgment.")

The weight of a survey, report and in turn opinion of an expert must be given to the trier of fact, meaning the jury or in the case of a bench trial, the Court. <u>Id.</u> (citing <u>Summers v. A. Teichert & Son, Inc</u>., 127 F.3d 1150, 1152 (9th Cir.1997)) ("Ultimately these responses may not add up to much, and a reasonable juror might ultimately agree with the district court that the survey did not prove that Clicks' trade dress had acquired secondary meaning. But the juror could only have done so after considering conflicting evidence and deciding what weight to accord the survey and the follow-up interviews. This undertaking describes the proper role for a trier of fact; it is not the role

of a district court at the summary judgment stage where the issue is whether a triable issue of fact even exists.").

The Court should not weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue for trial, and this matter includes battling experts with differing opinions and surveys in support of those opinions.

V. **IT IS IMPROPER FOR CYTO TO TRY TO RELY ON NON-PURSUASIVE, NON-BINDING PRECEDENT WHEN THERE IS AMPLE NINTH CIRCUIT BINDING PRECEDENT FOR THIS COURT TO CONSIDER.**

The Ninth Circuit has gone so far as to point out lower courts' abuses of discretion by basing decisions on non-binding precedent from other circuits and non-reported case law from the Ninth Circuit, when there is ample amount of binding and reported case law on the issue of the admissibility of a survey in the Ninth Circuit. See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc., 618 F.3d 1025 (9th Cir. 2010). Cyto has intentionally cited case law that is not binding on this Court, knowing full well that under the well-established case law from the Ninth Circuit that Mr. Gelb's survey is admissible, his reports are admissible, and his opinions are admissible, because conflicting expert opinions and reports are evidence that an issue is not ripe for summary judgment and create a triable issue for the trier of fact to decide at trial. Tarkus Imaging, Inc. v. Adobe Systems, Inc., 2012 WL 2175788 *1 (D.Del. June 14, 2012)(citing Transonic Sys., Inc. v. Non–Invasive Med. Techs. Corp., 143 Fed. Appx. 320, 330 (Fed.Cir. July 25, 2005) (finding "expert testimony sufficient to raise a genuine issue of material fact"); Goldman v. Standard Ins. Co., 341 F.3d 1023, 1036 (9th Cir.2003) (denying summary judgment because determination of "who is correct in this battle of experts is not for [the Court] to decide"); Rockwell Int'l Corp. v. United States, 147 F.3d 1358, 1364 (Fed.Cir.1998) (affirming denial of summary judgment, given that "summary judgment papers [were] not sufficient to resolve the differences in expert opinion")).

Mr. Gelb is a well educated and vastly experienced expert in the field of consumer perception and surveys. He created a survey to determine whether or not consumers believed Muscle Milk contained milk because of the Muscle Milk name. Mr. Gelb knows the proper

processes and procedures, he employed them, and he has provided a report with his expert findings. All of the arguments and theories set forth by Cyto in their Motion to Exclude the Survey, Report and Testimony of Mr. Gelb all go toward weight and not the admissibility of the Gelb survey and his resulting reports and opinions.

## VI. CONCLUSION.

Therefore, for the reasons stated above, VPX respectfully requests this Court deny Cyto's request to exclude the survey, report and testimony of Mr. Gabriel Gelb.

Dated: July 25, 2012         KING PARRET & DROSTE LLP

By: /S/ Alan J. Droste
   Alan J. Droste
   adroste@kpdlex.com
   (949) 633-3484

VITAL PHARMACEUTICALS, INC.

By: /S/ Kalina Pagano
   Kalina Pagano (*pro hac vice*)
   kpagano@vpxsports.com
   Victoria Godwin (*pro hac vice*)
   vickeyg@vpxsports.com
   (954) 641-0570

Attorneys for VITAL PHARMACEUTICALS, INC.

CERTIFICATE OF SERVICE

I, Victoria N. Godwin, hereby certify and declare as follows:

1. I am over the age of 18 years and am not a party to the within cause. I am employed in the Broward County, State of Florida.

2. My business address is 1600 North Park Drive, Weston, Florida 33326.

3. On July 25, 2012, I served a true copy of the attached document titled exactly:

RESPONSE OF VITAL PHARMACEUTICALS, INC. IN OPPOSITION TO CYTOSPORT, INC.'S MOTION TO EXCLUDE THE SURVEY, REPORT AND TESTIMONY OF GABRIEL GELB; MEMORANDUM OF POINTS AND AUTHORITIES

by filing through the CM/ECF system and thereby causing it to be served via electronic mail to all persons appearing on the docket sheet to receive service in this case, as listed below:

| | |
|---|---|
| Glenn W. Peterson <gpeterson@mpwlaw.net><br>MILLSTONE, PETERSON & WATTS, LLP<br>2267 Lava Ridge Court,<br>Suite 210<br>Roseville, CA  95661<br>Telephone:  (916) 780-8222<br>Facsimile:  (916) 780-8775 | Plaintiff/Counterclaim-Defendant,<br>CytoSport, Inc. |
| Peter M. de Jonge <dejonge@tnw.com><br>Jed H. Hansen <hansen@tnw.com><br>THORPE NORTH & WESTERN, L.L.P<br>8180 South 700 East, Suite 350<br>Sandy, UT  84070<br>Telephone:  (801) 566-6633<br>Facsimile:  (801) 566-0750 | Plaintiff/Counterclaim-Defendant,<br>CytoSport, Inc. |
| Mark M. Bettilyon <mbettilyon@RQN.COM ><br>Sam C. Straight <sstraight@RQN.COM><br>RAY QUINNEY & NEBEKER, PC<br>36 South State Street, Suite 1400<br>Salt Lake City, UT  84111<br>Telephone:  (801) 532-1500<br>Facsimile:  (801) 532-7543 | Plaintiff/Counterclaim-Defendant,<br>CytoSport, Inc. |

| | | |
|---|---|---|
| 1 | | |
| 2 | George Charles Nierlich, III <cnierlich@gibsondunn.com><br>Joshua Aaron Jessen <jjessen@gibsondunn.com> | Plaintiff/Counterclaim-Defendant,<br>CytoSport, Inc. |
| 3 | Gibson, Dunn and Crutcher LLP<br>555 Mission Street, Suite 3000 | |
| 4 | San Francisco, CA 94105<br>Telephone: 415-393-8239 | |
| 5 | Facsimile: 415-374-8486 | |
| 6 | Kalina Pagano <kpagano@vpxsports.com> | Co-Counsel for |
| 7 | Vital Pharmaceuticals, Inc.<br>1600 North Park Drive | Defendant/Counterclaimant |
| 8 | Weston, FL  33326 | |
| 9 | Alan Droste < adroste@kpdlex.com><br>King Parrent & Droste LLP | Co-Counsel for<br>Defendant/Counterclaimant |
| 10 | 450 Newport Center Drive, Suite 500<br>Newport Beach, CA 92660 | |

I certify and declare under penalty of perjury that the foregoing is true and correct.  Executed this 25th day of July, 2012, in Weston, Florida.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　 /S/ *Victoria N. Godwin*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Victoria N. Godwin
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　<vickeyg@vpxsports.com>
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Telephone: 954-641-0570 (ext 296)