UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CYTOSPORT, INC., a California  ) Case No. 2:08-CV-02632-JAM-GGH
corporation,                   )
                               ) ORDER DENYING PLAINTIFF'S
                  Plaintiff,   ) MOTION FOR SUMMARY JUDGMENT ON
                               ) ITS CLAIMS, GRANTING
        v.                     ) PLAINTIFF'S MOTION FOR SUMMARY
                               ) JUDGMENT ON DEFENDANT'S
                               ) COUNTER-CLAIMS, AND DENYING
VITAL PHARMACEUTICALS, INC. a  ) DEFENDANT'S MOTION FOR
Florida corporation,           ) EMERGENCY STAY
                               )
                  Defendant.   )
_____

     This matter is before the Court on two motions for summary

judgment filed by Plaintiff CytoSport, Inc. ("CytoSport") against

Defendant Vital Pharmaceuticals, Inc. ("VPX").  The first motion is

for judgment on counter-claims raised by VPX in its Amended Answer,

Affirmative Defenses, and Counterclaim (Doc. # 115-1).  VPX opposes

the motion (Doc. # 199).  The second motion is for judgment on

CytoSport's fifth through eighth causes of action in its Third

Amended Complaint ("TAC") (Doc. # 195).  VPX also opposes this

motion (Doc. # 201).  VPX also filed a motion seeking an emergency

stay of these proceedings pending final agency action by the Food

and Drug Administration ("FDA") (Doc. # 203), which CytoSport

1   opposes (Doc. # 207).

2                      I.   BACKGROUND

3        This case originated in 2008 when VPX released a product

4   called Muscle Power, a ready-to-drink protein shake. CytoSport

5   already marketed a competing product, Muscle Milk.  Muscle Power

6   used the same base packaging and similar graphics including layout

7   and font in the label design for its product.  CytoSport sued VPX

8   claiming that the Muscle Power product infringed on its trademark

9   and trade dress for Muscle Milk.  CytoSport also claims that VPX

10  created comparative advertisements that constitute false

11  advertising.[1]

12       Muscle Power and Muscle Milk are both marketed in octagonal

13  tetra-packs, one of the few available FDA approved packages

14  available for ready to drink protein drinks.  The drinks retail

15  from $3-$5 in the same retail establishments, and are targeted

16  toward people with active lifestyles like athletes and

17  bodybuilders.

18       During the short time that Muscle Milk and Muscle Power were

19  both on the market and in direct competition, VPX ran ads that are

20  relevant to the parties' claims.  First, Muscle Power ran an ad

21  that depicted a woman nursing a child with the caption, "MILK IS

22  FOR BABIES, MUSCLE POWER IS FOR MEN!" prominently displayed across

23  the ad.  VPX also ran ads that claimed Muscle Power contained 600%

24  less sugar and 183% less fat than Muscle Milk.

---

[1] A more comprehensive discussion of the factual background in this
case is available in the Order Granting CytoSport's Motion for
Preliminary Injunction (Doc. # 72).  To avoid duplication, the
factual summary in this order is brief.

This case was previously assigned to Judge Damrell who issued a preliminary injunction in CytoSport's favor on May 6, 2009 (Doc. # 72), finding that CytoSport was likely to prevail on the merits of its infringement claims.  VPX subsequently withdrew Muscle Power from the market and introduced a new product that did not resemble Muscle Milk.

The parties submitted expert reports and testimony to support their respective positions.  VPX submitted a survey conducted by Robert Klein that shows, under the circumstances of his survey, that 4.1% of consumer respondents mistake Muscle Power for Muscle Milk or as a product produced by CytoSport.  CytoSport submitted a survey conducted by Hal Poret that shows, under the circumstances of his survey, that 25.4% of consumer respondents conflate Muscle Power and CytoSport products.  There is also evidence in the record consisting of CytoSport employee declarations that CytoSport customers were confused as to the source of the Muscle Milk product.

On December 7, 2009, VPX filed counter-claims against CytoSport (Doc. 115).  VPX claims that the use of the word "milk" on Muscle Milk, a product that contains no liquid dairy milk, is deceptive.  VPX submitted a survey conducted by Gabriel Gelb that shows a mistaken belief amongst consumers, under the conditions of that survey, as to whether or not Muscle Milk contains milk.  VPX also relies heavily on an FDA warning letter dated June 29, 2011 wherein the FDA preliminarily determined that the mark "Muscle Milk" as used by CytoSport is deceptive because CytoSport's product contains no milk.  This warning letter, along with other documents, was submitted by VPX in a Request for Judicial Notice (Doc. # 199-

2).  The theory underlying VPX's counter-claim is also central to its defense on CytoSport's claims because VPX seeks to invalidate CytoSport's mark, thereby making it unenforceable.  As of the date of this order, the FDA has not followed up on its 2011 warning letter with a final determination about CytoSport's compliance with applicable FDA regulations.

CystoSport seeks entry of judgment on five claims in its complaint: Claim Five, Trademark Infringement, Violation of 15 U.S.C. § 1114(a); Claim Six, Trademark Infringement, Violation of Cal. Bus. & Prof. Code § 14245; Claim Seven, False Advertising, Violation of 15 U.S.C. § 1125(a) and Cal. Bus. & Prof. Code §§ 17200, 17500; and Claim Eight, Cancellation of U.S. Trademark Reg. Nos. 3,551,076 and 3,547,541 Pursuant to 15 U.S.C. § 1119. CytoSport does not move for judgment on its first through fourth claims.

CytoSport also seeks entry of judgment in its favor on the five counter-claims raised by VPX in its Answer to the TAC: 1) False Advertising, Violation of 15 U.S.C. § 1125(a); 2) False Advertising, Violation of Cal. Bus. & Prof. Code § 17500; 3) Unlawful Trade Practice, Violation of Cal. Bus. & Prof. Code § 17200; 4) Cancellation of Trademark Registrations Pursuant to 15 U.S.C. § 1119 for Violation of 15 U.S.C. § 1052(a); and 5) Declaratory Judgment Pursuant to 28 U.S.C. § 2201.

A hearing on these matters was held on August 8, 2012.  At that hearing, the Court ordered additional briefing on two issues: 1) the effect of a recent Ninth Circuit decision, Pom Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170, 1176 (9th Cir. 2012), on VPX's FDA warning letter based counter claims, and 2) the potential impact of

1    a final FDA decision determining that CytoSport's use of the Muscle

2    Milk mark on a product that contains no milk is deceptive.   The

3    Court also granted CytoSport's motion to exclude the Gelb survey

4    and denied the motion to exclude the Klein survey for the reasons

5    discussed below in this order.

6        In sum, the following motions have been presented to the Court

7    for decision and are discussed below: 1) CytoSport's Motion for

8    Summary Judgment on Claims Five, Six, Seven and Eight; 2)

9    CytoSport's Motion for Summary Judgment on VPX's Counter-Claims; 3)

10   CytoSport's Motions to Exclude the Expert Testimony of Gelb and

11   Klein; 4) VPX's Request for Judicial Notice; and 5) VPX's Emergency

12   Motion to Stay.

13

14                        II.   OPINION

15   A. Evidentiary Motions

16       CytoSport filed two motions to exclude VPX's expert witnesses.

17   The first motion is to exclude the testimony of Robert L. Klein

18   (Doc. # 196) who conducted a survey about customer confusion

19   between the Muscle Power and Muscle Milk marks.   The second is to

20   exclude the testimony of Gabriel M. Gelb (Doc. # 194) who conducted

21   a survey about consumer confusion created by the use of the Muscle

22   Milk mark on a product that contains no milk.

23       Under Federal Rule of Evidence 702, the district court is the

24   "gatekeeper" in order to "ensur[e] that an expert's testimony both

25   rests on a reliable foundation and is relevant to the task at

26   hand."   Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597

27   (1993).   A district court must exclude evidence that is either not

28   "relevant," or not conducted according to accepted principles.

1  Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997)

2  (citing E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280,

3  1292 (9th Cir. 1992)).  In the Ninth Circuit, surveys are to be

4  admitted in trademark cases so long as they are conducted according

5  to accepted principles.  Gallo, 967 F.2d at 1292.  "Technical

6  unreliability goes to the weight accorded a survey, not its

7  admissibility."  Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp.

8  of Cal., 694 F.2d 1150, 1156 (9th Cir. 1982).

9         Under Federal Rule of Evidence 403, relevant and

10  otherwise admissible evidence may be excluded when the danger of

11  unfair prejudice substantially outweighs its probative value.

12         1. Gelb Survey

13    At the August 8, 2012 hearing, the Court granted CytoSport's

14  motion to exclude evidence of a survey conducted by Gabriel Gelb

15  which was done to test confusion created by the Muscle Milk mark,

16  i.e., the use of Muscle Milk on a product that contains no milk

17  causes consumers to mistakenly believe that the product contains

18  milk. The basis for the Court's decision is as follows.

19     The Gelb survey was a series of three questions where

20  respondents were presented three brand names without accompanying

21  trade dress or images of the products: Muscle Milk, ProMan-X, and

22  Lean Body.  They were then asked if each product contained a lot,

23  some, or no protein, creatine, and milk.  Consumers did not have an

24  "I don't know" option or another means to indicate lack of

25  knowledge.  Lean Body and Muscle Milk are protein drinks, ProMan-X

26  is a herbal male enhancement supplement.  The respondent's answers

27  indicate that a high level of guessing occurred.  For instance, for

28  ProMan-X, 98% said it contains protein, 92% creatine, and 68% milk.

1   ProMan-X does not contain any of these ingredients.  For Muscle

2   Milk, 80% responded that it contained milk.  Gelb admitted in his

3   deposition that respondents were guessing.  Gelb Dep. 221:14-18.

4        CytoSport cites two cases to support its contention that the

5   Gelb survey was not conducted according to accepted principles.

6   Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., 292

7   F. Supp. 2d 594, 603 (D.N.J. 2003) (discrediting a survey that does

8   not control for respondents' preexisting beliefs); Procter & Gamble

9   Co. v. Ultreo, Inc., 574 F. Supp. 2d 339, 351 (S.D.N.Y. 2008)

10  (same).  VPX responds with general arguments about the adequacy of

11  the survey, but cites no authority that shows that the methods used

12  by Gelb are generally acceptable.  VPX bears the burden of showing

13  the admissibility of its survey, Keith v. Volpe, 858 F.2d 467, 480

14  (9th Cir. 1988), and it has not met its burden.  Accordingly, the

15  Gelb survey is excluded.

16       2. Klein Survey

17       CytoSport's motion to exclude a survey conducted by VPX's

18  expert, Robert Klein was denied by the Court at the August 8, 2012

19  hearing for the following reasons.

20       The Klein survey was conducted under the guidelines

21  established by Union Carbide Corp. v. Ever-Ready Inc., 531 F.2d 366

22  (7th Cir. 1976) (superseded on other grounds).  Klein asked

23  respondents to examine a container of Muscle Power and determine

24  who made the product.  4.1% of respondents, a number that tends not

25  to show consumer confusion, indicated that CytoSport or Muscle Milk

26  made the product.  CytoSport argues that Klein's survey failed to

27  replicate market conditions, failed to determine whether or not

28  respondents were aware of CytoSport or Muscle Milk before asking

them questions, and failed to distinguish respondents who believed that the Muscle Power product was actually Muscle Milk.

All of CytoSport's arguments go to the technical reliability of Klein's survey. CytoSport does cite case law that finds that Ever-Ready surveys are to be accorded diminished weight under similar circumstances, but that is not an issue related to the initial admissibility of the survey. Further, the Court is bound by the Gallo decision, and CytoSport only cites district court cases from other circuits to support excluding the survey. CytoSport does not dispute that the Ever-Ready format is a proper format under some circumstances, and the survey should be admitted because it is relevant to the task at hand and was conducted according to accepted principles. Gallo, 967 F.2d at 1292. CytoSport's technical reliability arguments are meritorious, but they go to the issue of weight rather than admissibility.

CytoSport's argument under Rule 403 also fails because the danger of unfair prejudice does not substantially outweigh the probative value of the survey. While CytoSport's arguments about the technical reliability of the survey are persuasive, there is little danger of unfair prejudice because CytoSport can attack the survey at trial and convince the jury that the survey is to be accorded little weight.

### 3. VPX's Request for Judicial Notice

The Court also considered and granted, in part, VPX's Request for Judicial Notice at the August 8, 2012 hearing. The documents consist of preliminary findings of governmental entities, previous filings of the parties, and a document from the National Advertising Division.

1    Generally, the Court may not consider material beyond the

2  pleadings in ruling on a motion to dismiss for failure to state a

3  claim.  The exceptions are material attached to, or relied on by,

4  the complaint so long as authenticity is not disputed, or matters

5  of public record, provided that they are not subject to reasonable

6  dispute.  E.g., Sherman v. Stryker Corp., 2009 WL 2241664 at *2

7  (C.D. Cal. Mar. 30, 2009) (citing Lee v. City of Los Angeles, 250

8  F.3d 668, 688 (9th Cir. 2001) and Fed. R. Evid. 201).

9    The documents submitted from governmental entities are subject

10 to judicial notice for the fact that they exist.  No party disputes

11 that the governmental entities issued the documents, nor could

12 they.  The legal conclusions and other findings in the documents,

13 however, are subject to dispute and the Court does not take

14 judicial notice of the contents of the materials.  The same goes

15 for the other documents submitted.  The Court may take notice that

16 the documents exist, but not attribute any weight to their contents

17 so long as they are disputed by either party.  VPX's motion is

18 therefore granted in part and denied in part.

19   B. Legal Standard for Summary Judgment

20   Summary judgment is proper "if the pleadings, depositions,

21 answers to interrogatories, and admissions on file, together with

22 affidavits, if any, show that there is no genuine issue of material

23 fact and that the moving party is entitled to judgment as a matter

24 of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment

25 "is to isolate and dispose of factually unsupported claims or

26 defenses."  Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

27   The moving party bears the initial burden of demonstrating the

28 absence of a genuine issue of material fact for trial.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electrical Services, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  "[M]ere disagreement or bald assertion that a genuine issue of material fact exists will not preclude the grant of summary judgment".  Harper v. Wallingford, 877 F. 2d 728, 731 (9th Cir. 1987).

The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-moving party]."  Anderson, 477 U.S. at 252.  This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id.

Federal Rule of Civil Procedure 56(d) permits a court, upon a sufficient showing of specific reasons why a nonmovant cannot present facts essential to its opposition, to defer consideration of or deny a pending motion for summary judgment.

C. VPX's Counter-claims

   1. Claims Barred By Deference to the FDA

1    VPX's first and fourth counter-claims are for alleged

2    violations of the Lanham Act by CytoSport.  VPX claims that

3    CytoSport's use of the term "Milk" to refer to a product that

4    contains no milk, as defined by FDA regulations, is deceptive.  VPX

5    therefore contends that CytoSport's trademark "Muscle Milk" is

6    invalid because it violates 15 U.S.C. § 1125(a)'s proscription of

7    deceptive marks and should therefore be cancelled.  VPX points

8    primarily to the warning letter sent from the FDA to CytoSport

9    describing the FDA's position that CytoSport's use of "Muscle Milk"

10   violates 21 U.S.C. § 343(a)(1) because it is false or misleading,

11   and asks the Court to accept the FDA's analysis.  VPX RJN Ex. 1.

12       Preliminary, the Court must consider whether or not VPX's

13   Lanham Act claims are barred.  Under the Food, Drug, and Cosmetics

14   Act ("FDCA"), 21 U.S.C. § 301 et seq., the FDA regulates and

15   enforces food labeling requirements.  21 U.S.C. § 343.  The FDA

16   regulates the definition of certain foods, including milk.  21 CFR

17   § 131.110.  When the FDA extensively regulates a certain area and

18   does not act to enforce its regulations, the Lanham Act may not be

19   used by a private party to "usurp, preempt, or undermine FDA

20   authority."  Pom Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170,

21   1176 (9th Cir. 2012).  Whether or not a Lanham Act claim is barred

22   by FDA authority is dependent on the facts of a particular case.

23   Id.

24       In Pom, Pom sought to challenge Coca-Cola's use of the term

25   "Pomegranate Blueberry Flavored Blend of 5 Juices" under the Lanham

26   act contending that the name misled consumers.  Id. at 1172-73. Pom

27   argued that since the Coke product only contained .3% pomegranate

28   juice and .2% blueberry juice, it was misleading for the product to

prominently display pomegranate and blueberry on its label when it primarily consisted of other cheaper juices.  The Pom court held that the Lanham Act claim was barred because the labeling did not obviously violate FDA regulations.  Id. at 1178.  The Pom court did not hold that the label conformed to FDA regulations or that it was not misleading, but instead deferred to the FDA's ability to act against Coca-Cola if and when it determined that the Coke label violated FDA regulations.  Id.

This case is nearly indistinguishable from the situation presented in Pom.  Here, the FDA regulates the use of the term "milk" on food labels.  The FDA is aware of CytoSport's labeling and has not acted.  If the FDA determines that CytoSport's use of the term "Muscle Milk" is misleading to consumers, despite the "Contains No Milk" disclaimer on the label, it will act to enforce the labeling requirement.  The fact that the FDA sent a warning letter to CytoSport concerning its labeling does not require a different finding.  FDA warning letters are informal and advisory, and do not amount to an FDA action.  Summit Tech., Inc. v. High-Line Med. Instruments Co., 922 F. Supp. 299, 306 (C.D. Cal. 1996) (holding that FDA warning letters do not amount to an FDA position on a matter because the FDA can change its final determination based on further investigation).

VPX's first and fourth counter-claims require a finding that CytoSport's Muscle Milk label is deceptive or misleading under the FDCA and the associated regulations.  The Court finds that the claims are barred by the holding in Pom as the FDA is the entity that must make that determination in the first instance.  Pom, 679 F.3d at 1178 ("[W]e must keep in mind that we lack the FDA's

expertise in guarding against deception in the context of . . . beverage labeling."). VPX argues that the Court should defer granting judgment until the FDA issues a final decision on CytoSport's use of "Muscle Milk," but the FDA's eventual decision may support CytoSport, VPX, or fall somewhere in the middle. Deferring consideration of the present motion based on what the FDA may or may not do is inappropriate for two reasons. First, as discussed below CytoSport is entitled to judgment on the merits of VPX's counter-claims for other reasons. Second, the Pom holding is clear that the claims are barred until the FDA issues its decision, not that they are stayed or deferred. CytoSport is accordingly entitled to judgment as a matter of law on VPX's first and fourth counter-claims.

VPX also brings two state law claims which reference the FDA regulations to show that CytoSport's use of the term "Milk" is inconsistent with FDA regulations. These claims are not barred by the ruling in Pom because the FDA specifically permits states to create labeling requirements that are identical to the FDA's and establish independent causes of actions for those claims. Delacruz v. Cytosport, Inc., No. C 11-3532 CW, 2012 WL 2563857, 7, Slip Copy (N.D. Cal. June 28, 2012) (citing 21 U.S.C. § 343-1).

2. Statute of Limitations

CytoSport argues that VPX's state law claims for False Advertising and Unfair Competition are barred by their statutes of limitations. VPX brings both its False Advertising Law ("FAL") and UCL claims under the UCL, which has a four year statute of limitations. Cal. Bus. & Prof. Code § 17208; Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010). To

13

have standing to sue under the UCL, "a plaintiff must . . . have suffered injury and lost money or property." <u>Anunziato v. eMachines, Inc.</u>, 402 F. Supp. 2d 1133, 1136 (C.D. Cal. 2005).

In this case, VPX did not have standing to pursue its FAL and UCL claims against CytoSport until it suffered an injury.  Since VPX did introduce its competing Muscle Power product, its cause of action only accrued at that time because it could not previously show that it suffered an injury and lost money or property due to CytoSport's practices.  VPX's 2009 FAL and UCL counter-claims were therefore filed well within the four year statute of limitations.[2]

     3. <u>CytoSport's Arguments Regarding the Remaining State Law Claims</u>

CytoSport also argues that it is entitled to summary judgment on all of VPX's counter-claims, including the remaining FAL and UCL state law claims, because VPX failed to produce sufficient evidence to support its claims.  VPX responds by citing the FDA warning letter discussed above as well as preliminary actions taken by other federal agencies, non-governmental organizations, and Canadian intellectual property authorities.

In order to survive summary judgment on a Lanham Act false

---

[2] CytoSport raises a similar argument based on laches with respect to VPX's federal claims, arguing that they too are time barred. Although these claims are barred by the <u>Pom</u> holding, they are not barred by laches for the same reasons that VPX's state law counter-claims were filed within the statute of limitations.  <u>See</u> <u>Barrus v. Sylvania</u>, 55 F.3d 468, 470 (9th Cir. 1995) (citing <u>Halicki v. United Artists Communications, Inc.</u>, 812 F.2d 1213, 1214 (9th Cir.1987)) (holding that a party has standing under the Lanham act when it suffers a "commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant.").

advertising claim, a claimant must show:
> (1) Defendants made a false or misleading statement of fact in commercial advertising or promotion about their own or another's goods or services;
> (2) that the statement actually deceives or is likely to deceive a substantial segment of the intended audience;
> (3) that the deception is material in that it is likely to influence purchasing decisions;
> (4) that Defendant caused the statement to enter interstate commerce; and
> (5) that the statement results in actual or probable injury to Plaintiff.

Brosnan v. Tradeline Solutions, Inc., 681 F. Supp. 2d 1094, 1099 (N.D. Cal. 2010).  "In the Ninth Circuit, claims of unfair competition and false advertising under [the FAL and UCL] are substantially congruent to claims made under the Lanham Act[,]" and the analyses of VPX's federal and state law claims are consolidated for the purposes of this order.  Walker & Zanger, Inc. v. Paragon Indus., Inc., 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (internal quotations omitted).

### a.  False or Misleading Statement of Fact

In order to survive summary judgment, VPX must produce evidence that CytoSport's use of the Muscle Milk mark was either literally false or actually misled a substantial segment of the intended audience.  William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 258 (9th Cir. 1995).  In order to show that a statement is literally false, it must be unambiguously false.  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586-87 (3d Cir. 2002).

Here, VPX contends that the following evidence shows that CytoSport's use of the mark "Muscle Milk" is false:

1.   The FDA Warning Letter;

2.   CytoSport's decision to add the disclaimer "Contains No Milk" to its Muscle Milk labels;

3.   The US Patent and Trademark Offices's Initial Rejection of CytoSport's attempt to register the mark "MUSCLE MILK ACTIVE;"

4.   CytoSport's registration of "MUSCLE MILK CONTAINS NO MILK;"

5.   The National Advertising Division's ("NAD") decision to refer CytoSport to the FDA and FTC after CytoSport failed to participate in proceedings with Nestle USA related to the accuracy of the "MUSCLE MILK" mark; and

6.   A challenge to CytoSport's mark in Canada.

First, as discussed above, the FDA warning letter is not a final decision by the FDA and its position may change after further investigation.  Thus, there is no evidence in the record that the FDA has determined or will determine that CytoSport's mark is deceptive.  Likewise, the material submitted by VPX from the USPTO is a preliminary review of CytoSport's application for "MUSCLE MILK ACTIVE" wherein the USPTO requests more information, but does not come to any conclusion concerning the use the term "MILK."  The NAD's decision to refer CytoSport to the FTC and FDA does not constitute a decision by either agency that CytoSport's product is deceptively mislabeled.  Canada's pending decision on CytoSport's mark in Canada is also a pending decision and does not constitute evidence that the mark is deceptive.

VPX next argues that CytoSport's decision to add a disclaimer, "Contains No Milk" to the front of it its Muscle Milk labels

constitutes an admission that its previous label, which did not display the disclaimer, was deceptive.  VPX does not cite any authority to support this conclusion, however, and one of the cases it does cite indicates that a disclaimer may be sufficient to cure a misleading label.  Novartis, 290 F.3d at 599.

In any event, none of the proffered evidence shows that the use of the term "Muscle Milk" along with the other content on the label, including the accurate ingredient list, is unambiguously false.  In the alternative, VPX attempts to rely on evidence that a substantial segment of the intended audience was deceived by CytoSport.  On this point, both parties produced expert opinions based on consumer surveys to support their contentions/positions. Since the Court excluded VPX's expert report, the Gelb Survey, CytoSport's expert report by Kent D. Van Liere (Doc. # 193-7), Ex. A, is uncontradicted.  The Van Liere report tends to show that consumers were no more confused by the Muscle Milk label then by a generic control bottle label.  Accordingly, VPX is left without evidence to support its position, and no material dispute exists with regard to this element.

   b. The Statement Deceived or is Likely to Deceive

For the same reasons discussed in the preceding section, CytoSport establishes that no material dispute exists as to this element.

   c. The Deception Was Material

CytoSport argues that there is a complete lack of evidence to support this element.  VPX does not respond to the substance of CytoSport's argument, instead contending that the preliminary injunction issued previously in this case gives VPX standing to

1  bring this claim because it was damaged when Muscle Power was

2  ordered off the market.

3      "In order to withstand a summary judgment motion, there must

4  also be evidence that the injury was 'competitive' i.e., that the

5  plaintiff's ability to compete with the defendant was actually

6  harmed." Brosnan v. Tradeline Solutions, Inc., 681 F. Supp. 2d

7  1094, 1099 (N.D. Cal. 2010) (citing Halicki v. United Artists

8  Communications Inc., 812 F.2d 1213 (9th Cir.1987)).  A deception is

9  material if it is likely to influence purchasing decisions.  Id.

10     The evidence before the Court, at best, only has a tendency to

11  show that consumers will believe that Muscle Milk contains liquid

12  dairy milk.  The pending FDA decision on the use of the Muscle Milk

13  mark, if it does end up supporting VPX's position, will only stand

14  for the proposition that the mark causes consumers to believe that

15  Muscle Milk contains milk.  There is no evidence that such a

16  mistaken belief actually causes consumers to choose Muscle Milk

17  over a competing product such as VPX's protein shakes, or that the

18  presence of milk in a protein shake matters to consumers at all.

19  Even if the Gelb study were admissible, that report only speaks to

20  the likelihood of consumer confusion, not that the confusion was

21  material to purchasing decisions.  The lack of evidence on this

22  element is fatal to VPX's counter-claims, accordingly, there is no

23  genuine dispute as to this element, and VPX fails to meet its

24  burden.

25          d. CytoSport Caused the Statement to Enter Interstate

26             Commerce

27     It is undisputed that CytoSport caused the statement to enter

28  interstate commerce.

18

1        e. The Statement Resulted in Actual or Probably Injury

2           to VPX

3    For the same reason that the third element is not in genuine

4 dispute, this element is also not genuinely disputed.  VPX has not

5 produced evidence that customers will be induced to purchase

6 CytoSport's product over its own if they mistakenly believe that

7 Muscle Milk contains liquid dairy milk.

8        f. Summary of VPX's Counter-claims

9    Because VPX failed to support its counter-claims with

10 admissible evidence, there is no genuine dispute of material fact.

11 CytoSport is entitled to judgment as a matter of law because VPX

12 has not shown that consumers are likely to be confused by

13 CytoSport's use of the Muscle Milk mark and that, if they are

14 actually confused, that they will be more likely to purchase Muscle

15 Milk as a result.[3]  There is simply no evidence, viewing the entire

16 record in a light favorable to VPX, from which a reasonable jury

17 could find in VPX's favor.  VPX's counter-claims for Unlawful Trade

18 Practice and Cancellation of Trademark are dependent on VPX's

19 counter-claims for false advertising and a finding that CytoSport's

20 use of the Muscle Milk mark is deceptive.  Since VPX's false

21 advertising counter-claims fail, so do VPX's remaining counter-

22 claims.  Accordingly, CytoSport's motion for summary judgment on

23 VPX's five counter-claims is granted in its entirety.[4]

24 _____

25 [3] The analysis applies equally to VPX's Lanham Act, UCL, and FAL
counter-claims.  Thus, CytoSport would be entitled to judgment on
VPX's Lanham Act Claims even if they were not barred by the Pom
26 holding.

[4] CytoSport is also entitled to judgment on VPX's fifth counter-
27 claim for Declaratory Judgment.  That claim, which is based on the
other counter-claims, fails because there is no genuine dispute as

28

D. <u>CytoSport's Motion for Summary Judgment on the Third Amended Complaint</u>

    1. <u>CytoSport's  Infringement and Cancellation Claims</u>

CytoSport moves for judgment on its federal and state trademark infringement and cancellation claims (Claims Five, Six and Eight).  To prevail on a claim of trademark infringement under 15 U.S.C. § 1114, CytoSport must establish that: 1) the Muscle Milk mark is valid, 2) CytoSport is the senior mark holder, and 3) VPX's use of the Muscle Power mark is likely to cause confusion in the marketplace.  <u>Conversive, Inc. v. Conversagent, Inc.</u>, 433 F. Supp. 2d 1079, 1087 (C.D. Cal. 2006) (citing <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999)).  Generally, "trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual . . . .  Additionally, the question of likelihood of confusion is routinely submitted for jury determination as a question of fact."  <u>Clicks Billiards, Inc. v. Sixshooters</u>, Inc., 251 F.3d 1252, 1265 (9th Cir. 2001).  CytoSport seeks cancellation of VPX's mark because it infringes on the Muscle Milk mark, meaning that CytoSport is only entitled to judgment on its cancellation claim if it is entitled to judgment on its infringement claims.

        a.  <u>Validity of Muscle Milk Mark & CytoSport is Senior Holder</u>

VPX contests the validity of CytoSport's Muscle Milk mark on the same grounds raised in its counter-claims, raising the validity of the mark as a defense rather than affirmative claim.

---

to the materiality of CytoSport's alleged misrepresentations.

1    A valid defense to a claim of infringement is that the mark is

2    invalid.  Pursuant to 15 U.S.C. § 1065, a mark becomes

3    "incontestable" after five years of continuous post-registration

4    use.  Once a mark is incontestable, the only grounds upon which it

5    can be canceled are found in 15 U.S.C. §§ 1064(3) and 1064(5).

6    Further, a party may raise the defenses listed in 15 U.S.C. 1115(b)

7    to an infringement claim.  15 U.S.C. § 1064(3) in turn indicates

8    that any mark obtained in violation of 15 U.S.C. 1052 may be

9    cancelled after it becomes incontestable.  15 U.S.C. § 1052(a)

10   prohibits registration of a deceptive mark.

11   Based on the applicable statutes, VPX may raise the

12   deceptiveness of the Muscle Milk mark as a defense.  See KP

13   Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d

14   596, 603 (9th Cir. 2005) ("An incontestable registration is still

15   subject to certain defenses or defects . . . .").  This finding is

16   also supported by general principles of equity that limit the

17   enforceability of trademarks that deceptively describe the product

18   being sold.  Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d

19   837, 847 (9th Cir. 1987); Clinton E. Worden & Co. v. Cal. Fig Syrup

20   Co., 187 U.S. 516, 539-540 (1903) (holding that a mark for a

21   product "Syrup of Figs" that did not contain figs was unenforceable

22   because it was fraudulent).  Even though VPX cannot maintain its

23   counter-claims because it lacks sufficient evidence, it may raise

24   its arguments as a defense to CytoSport's affirmative claims.  A

25   material dispute therefore exists with regard to this element,

26   making summary judgment inappropriate.

27          b.  Likelihood of Confusion

28   CytoSport moves for judgment on this element arguing that the

21

legal factors used to evaluate the likelihood of confusion weigh in favor of CytoSport's position.  VPX does not address the majority of the factors, but does argue that material disputes exist with regard to the similarity of the marks, the likelihood of confusion between the marks, and VPX's intent in selecting its Muscle Power mark.

Courts use eight factors to determine whether or not an allegedly infringing mark is likely to cause consumer confusion in the marketplace:

(1)  strength of the allegedly infringed mark;

(2)  proximity or relatedness of the goods;

(3)  similarity of the sight, sound, and meaning of the marks;

(4)  evidence of actual confusion;

(5)  degree to which the marketing channels converge;

(6)  type of the goods and degree of care consumers are likely to exercise in purchasing them;

(7)  intent of the defendant in selecting the allegedly infringing mark; and

(8)  likelihood that the parties will expand their product lines.

E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979)).  "This list of factors, while perhaps exhausting, is neither exhaustive nor exclusive.  Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion."  Id. (internal citations omitted).

VPX opposes CytoSport's motion with regard to 1) the

22

1    similarity of the marks; 2) evidence of actual confusion; and 3)

2    the intent of VPX in selecting its Muscle Power mark, and those

3    factors are analyzed below.  For the purposes of this motion,

4    CytoSport's arguments with respect to the other five <u>Sleekcraft</u>

5    factors are unopposed and those factors therefore favor granting

6    judgment.

7              i.   <u>Similarity of the Sight, Sound, and Meaning of</u>

8                   <u>the Marks</u>

9         CytoSport contends that the marks are similar and that this

10   factor weighs in its favor.  VPX responds that the marks are two

11   distinct marks with little similarity.  VPX points out that there

12   are many products on the market that contain the word "muscle,"

13   particularly within the protein supplement market.  VPX also relies

14   on the USPTO's determination that the registered "Muscle Power"

15   mark is not likely to cause confusion with another mark.

16        "In analyzing the similarity of the marks, the court is to

17   view the marks as a whole, as they appear in the marketplace."

18   <u>Gallo</u>, 967 F.2d at 1291.

19        In this case, the evidence shows that Muscle Power and Muscle

20   Milk appeared on nearly identical products in the same stores.

21   Muscle Power used the same font that Muscle Milk used, the

22   packaging was identical, and the placement of the marks was also

23   identical.  Further, the determination by the USPTO was not

24   dispositive because it did not have all of the available evidence

25   in front of it, such as how the products were presented in the

26   marketplace.  <u>Carter-Wallace, Inc. v. Procter & Gamble Co.</u>, 434

27   F.2d 794, 801-802 (9th Cir. 1970) (finding that the USPTO

28   determination is inconclusive because it is made at the lowest

1  administrative level and without all of the available evidence).

2      VPX's argument, however, is sufficient to raise a genuine

3  dispute.  VPX's CEO testified that many products in the nutrition

4  supplement and protein shake milieu contain the word muscle.

5  Further, VPX argues that the marks are dissimilar enough for a

6  reasonable jury to conclude that the marks are not similar because

7  they consist of different secondary words, power and muscle.  See

8  Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 903 (9th

9  Cir. 2002) (overruled by statute on other grounds) (finding that a

10  reasonable jury could determine that "TREK" and "ObiTrek" are not

11  similar marks).  Additionally, CytoSport's argument rests at least

12  partially on the trade dress of both parties' products, and

13  CytoSport does not seek judgment on its trade dress claims.  While

14  trade dress is relevant to this element insofar as trade dress

15  creates the context for comparison, what confusion stems from the

16  similarity of the marks and what confusion stems from trade dress

17  is primarily a question for a jury to answer.  Accordingly, this

18  factor cannot be resolved through the present motion because it

19  requires the determination of disputed factual issues.

20          ii.  Evidence of Actual Confusion

21      CytoSport submits evidence of actual confusion consisting of

22  declarations made by its employees describing customers who were

23  confused by Muscle Power and Muscle Milk during the short time that

24  the two products were on the market.  VPX contends that this

25  evidence is inadmissible and should therefore not be considered and

26  that it is insufficient to show actual confusion.  CytoSport also

27  relies on its expert's survey, and VPX responds with the Klein

28  survey.  Finally, CytoSport contends without citation to authority

that a judicial finding that the marks are similar gives rise to an inference of confusion.

VPX's hearsay objection fails because statements of consumer confusion are admissible under the "state of mind" hearsay exception. Lahoti v. Vericheck, Inc., 636 F.3d 501, 509 (9th Cir. 2011). Evidence of actual confusion, however, may be found by a jury to be de minimis, thus making summary judgment inappropriate on this issue. Thane, 305 F.3d at 903 (citing Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1150 (9th Cir. 2002)). Similarly, the two conflicting expert opinions create a material issue of fact. While CytoSport cites Gable v. Nat'l Broad. Co., 727 F. Supp. 2d 815, 836-37 (C.D. Cal. 2010), for the proposition that dueling expert opinions do not necessarily create a triable issue of fact, that case is distinguishable. Gable dealt with relatively simple literary works that the trial court analyzed on its own, finding that the expert comparisons were largely superfluous. Here, the experts offer competing surveys which require some technical expertise and familiarity with accepted principles. Accordingly, VPX raises material disputes with regard to this factor, and it weighs against granting judgment.

        iii.   <u>Intent of the Defendant in Selecting the Allegedly Infringing Mark</u>

For this factor, CytoSport cites deposition testimony that VPX's CEO John H. Owoc compared every Tetra-Pak packaged protein shake before choosing the design used for Muscle Power. Thus, CytoSport argues, Mr. Owoc must have considered Muscle Milk, giving rise to an inference that he considered Muscle Milk and intended to copy its design. VPX, however, points to comparative advertisements

25

1  run by VPX that disparage Muscle Milk and proclaim the superiority

2  of Muscle Power as compared to Muscle Milk.  VPX argues that these

3  advertisements show intent to distinguish between the products, not

4  pass off its Muscle Power shake as a CytoSport product.

5      This factor weighs against granting summary judgment because a

6  reasonable jury could interpret the evidence in either CytoSport's

7  or VPX's favor.  CytoSport's evidence of intentional infringement

8  is contradicted by VPX's evidence of the comparative advertisements

9  directly contrasting the two products.  Further, Mr. Owoc's

10  testimony is that he considered the packaging of every protein

11  shake on the market, which does not necessarily lead to an

12  inference that he intended to copy CytoSport's mark.  He may have

13  intended to create a package that was an amalgamation of many

14  competitors' designs or merely a design that met existing industry

15  expectations.  This element, therefore, hinges on the weight

16  assigned to the evidence, and different reasonable interpretations

17  of that evidence, meaning that a jury must determine if it is met.

18      Based on the foregoing analysis, CytoSport is not entitled to

19  summary judgment on its infringement or cancellation claims.  The

20  similarity of the marks, evidence of actual confusion, and the

21  intent of VPX in selecting its Muscle Power mark are crucial

22  factors in the analysis.  Based on material issues of fact raised

23  by VPX with regard to these three factors, it cannot be said that

24  as a matter of law CytoSport is entitled to judgment.  This outcome

25  is also consistent with the fact-heavy standard applied in

26  trademark infringement cases.  <u>Clicks Billiards, Inc. v.</u>

27  <u>Sixshooters</u>, Inc., 251 F.3d 1252, 1265 (9th Cir. 2001).

28  CytoSport's motion for judgment on claims five, six, and eight is

1   therefore denied.

2       2. CytoSport's False Advertising Claims (Claim Seven)

3       CytoSport also seeks summary judgment on its seventh claim for

4   violation of federal and state false advertising law.  CytoSport

5   contends that VPX's comparative advertisements which claimed that

6   Muscle Power had 600% less sugar and 183% less fat than Muscle Milk

7   were literally false because they described mathematical

8   impossibilities.  VPX responds that a reasonable jury could find

9   that VPX's advertisements conveyed a colloquial message that Muscle

10  Power contained 1/6th the sugar and 100/183rds the fat of Muscle

11  Milk.  VPX responds that the 600% and 183% claims are commonly

12  understood to mean that Muscle Milk has six times more sugar and

13  183% more fat than Muscle Power.  Further, since the 600% and 183%

14  less claims are mathematically nonsensical, they are not literally

15  false or misleading.  The parties agree that Muscle Milk contained

16  six times more sugar and 1.83 times more fat than Muscle Power.

17      The elements of CytoSport's false advertising claim are the

18  same as discussed for VPX's counter-claims.  "To demonstrate

19  falsity within the meaning of the Lanham Act, a plaintiff may show

20  that the statement was literally false, either on its face or by

21  necessary implication, or that the statement was literally true but

22  likely to mislead or confuse consumers."  Southland Sod Farms v.

23  Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  When a

24  statement is literally false, a rebuttable presumption is created

25  that consumer deceit and reliance occurred, thereby satisfying the

26  second and third elements of a false advertising claim.  U-Haul

27  Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1041 (9th Cir. 1986).

28

1    CytoSport's position faces an internal contradiction in that

2    VPX's claims must be literally false because they are nonsensical

3    in order for CytoSport to prevail on this claim.  CytoSport cites

4    no authority that supports its position that nonsensical or

5    impossible claims are "literally false" as a matter of law.  A

6    reasonable jury could also find that the commonly understood

7    meanings of VPX's claims accord with the reality of the two

8    products' contents.  Accordingly, VPX has a raised a genuine issue

9    of fact on this claim and CytoSport's motion is denied.

10   E. VPX's Emergency Motion to Stay

11   The final matter before the Court is VPX's motion to stay

12   proceedings pursuant to Federal Rule of Civil Procedure 56(d)

13   pending a final FDA ruling on the propriety of CytoSport's labeling

14   practices.  As discussed above, CytoSport is entitled to judgment

15   on VPX's counter-claims because there is no evidence that consumers

16   make purchasing decisions based on the dairy milk content of

17   protein shakes.  Thus, the Court declines to stay consideration of

18   CytoSport's motion with respect to VPX's counter-claims because a

19   pending FDA decision will not impact that necessary element or

20   resuscitate VPX's claims.

21   The analysis with respect to CytoSport's claims and the

22   pending trial is quite different.  As discussed in the section on

23   the validity of the Muscle Milk mark, VPX may be able to raise the

24   alleged deceptiveness of CytoSport's mark as a defense.  The

25   remaining question is whether or not a pending FDA decision

26   pursuant to FDA regulations justifies granting a stay pursuant to

27   Rule 56(d).  Clearly it does not.  CytoSport is not entitled to

28   judgment on its claims in either case, making a stay unnecessary

because VPX will not be prejudiced if a stay is denied.  Further, a final FDA decision will not be particularly helpful to VPX.  The FDA's reasoning is already laid out in its initial warning letter, and for purposes of the Lanham Act, a determination under FDA regulations is not dispositive.  At best, a final FDA decision is evidence that the FDA finds CytoSport's use of the Muscle Milk mark to be deceptive, which is already shown by the warning letter.  In order to use the alleged invalidity of the Muscle Milk mark as a defense to CytoSport's claims, VPX must do so under the Lanham act, which it admits requires a different standard than that applied by the FDA.  A stay is therefore unnecessary, and VPX's motion is denied.

### III. ORDER

For the foregoing reasons the Court issues the following order:

1. CytoSport's Motion for Summary Judgment on VPX's Counter-Claims is GRANTED;

2. CytoSport's Motion for Summary Judgment on Claims Five through Eight is DENIED;

3. CytoSport's Motion to Exclude the Testimony of Gabriel Gelb is GRANTED;

4. CytoSport's Motion to Exclude the Testimony of Robert Klein is DENIED; and

5. VPX's Motion for Emergency Stay is DENIED.

IT IS SO ORDERED.

Dated:  September 6, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE